# Illinois Official Reports

## Appellate Court

*Guerrero v. Municipal Officers Electoral Board*, 2017 IL App (1st) 170486

| | |
|---|---|
| Appellate Court Caption | CYNTHIA GUERRERO, CHRISTOPHER LITWIN, MICHAEL LaCASSA, DIEGO DiMARCO, and FRANK HOUSWERTH, Petitioners-Appellees, v. MUNICIPAL OFFICERS ELECTORAL BOARD OF THE VILLAGE OF FRANKLIN PARK, and ROBERT J. GODLEWSKI, Objector, Respondents-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-17-0486 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | March 31, 2017<br><br>May 9, 2017<br>May 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 2017-COEL-29 through 2017-COEL-33; the Hon. Laguina Clay-Herron, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Montana & Welch, LLC, of Palos Heights (Matthew M. Welch and P. Joseph Montana, of counsel), for appellant Municipal Officers Electoral Board for the Village of Franklin Park.<br><br>James P. Nally PC, of Chicago (James P. Nally, of counsel), for appellant Robert J. Godlewski. |

Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., of Chicago (Tiffany Nelson-Jaworski and Adam W. Lasker, of counsel), for appellees.

Panel             JUSTICE MASON delivered the judgment of the court, with opinion.
                  Justices Neville and Pierce concurred in the judgment and opinion.


## OPINION

¶ 1     The Municipal Officers Electoral Board of Franklin Park (Board), its members, and objector Robert J. Godlewski (collectively, respondents) appeal from an order of the circuit court of Cook County reversing the Board's final decision, which determined that petitioners, candidates for various offices in the Village of Franklin Park, were ineligible to appear on the ballot for the April 4, 2017, municipal election. The circuit court ruled that certain defects common to petitioners' respective statements of economic interests did not invalidate their candidacies and directed that petitioners' names appear on the ballot. We affirm.

¶ 2     Each of the petitioners filed statements of candidacy with the Village clerk as part of the newly formed Citizens for Change Party, seeking to be placed on the ballot for municipal elections to be held in Franklin Park on April 4, 2017. As a slate, petitioners sought election to the following positions: Village President (Cynthia Guerrero); Village Clerk (Michael LaCassa); and Village Trustee (Christopher Litwin, Diego DiMarco and Frank Houswerth). The statement of candidacy filed by each petitioner listed his or her home address.

¶ 3     The petitioners also filed with the Cook County Clerk a statement of economic interests listing "DNA" (*i.e.*, "does not apply") in answer to every question on the form seeking disclosure of relevant economic interests. There is a space at the top of the form under the candidate's name to fill in the office the candidate is seeking. Each petitioner wrote the title of the office, *i.e.*, "Village President," "Village Clerk," etc., but did not list Franklin Park as the municipality for which the disclosures were made. Although verifications were signed by petitioners, they were all undated. Petitioners' addresses were not listed on the forms, nor does there appear to be any place on the form that calls for an address, although the Illinois Governmental Ethics Act (Ethics Act) provides for an address. See 5 ILCS 420/4A-104 (West 2014). The forms were all file-stamped as received in the Office of the County Clerk on December 8, 2016.

¶ 4     On December 27, 2016, respondent Godlewski filed objections to each petitioner's nominating papers. In his objections, Godlewski claimed that petitioners filed "deficient receipts" relating to their statements of economic interests. But given that petitioners filed the entirety of their economic statements as their "receipts," the substance of Godlewski's objections actually related to certain information he claimed was lacking in the statements themselves. In particular, Godlewski claimed petitioners' statements were deficient in that petitioners failed to (1) identify the municipality in which they sought elective office, (2) list their respective addresses, and (3) date the verification. Godlewski contended that each of these defects invalidated petitioners' nominating papers.

- 2 -

¶ 5    The Board convened and held hearings on Godlewski's objections to each nominating petition that spanned several days in January 2017. The hearings on Godlewski's objections were consolidated with the hearing on motions to dismiss filed by each petitioner. In substantially identical decisions entered on January 25, 2017, the Board, with one member dissenting, sustained Godlewski's objections and denied petitioners' motions to dismiss. The Board directed that each petitioner's name not appear on the ballot for the upcoming election.

¶ 6    Specifically, the Board noted that the parties agreed that each statement of economic interests failed to list the unit of government for which the particular office was sought, the candidate's address, or a date next to the candidate's verification. The parties' disagreement focused on "the legal effect of the foregoing admitted facts." The Board conceded that each candidate's address and the unit of government for which office was sought were included in the nominating petitions and statements of candidacy. The Board further observed that neither objector nor petitioners had offered any evidence as to whether the omissions in the statement of economic interests were intentional or inadvertent.

¶ 7    On the merits, the Board noted that section 10-5 of the Election Code invalidates nomination papers if the candidate "fails to file a statement of economic interest as required by the Illinois Governmental Ethics Act in relation to his candidacy." 10 ILCS 5/10-5 (West 2014). While an electoral board generally does not have statutory jurisdiction to inquire into the truth of disclosures made by the candidate, it may nevertheless determine whether the statement itself was duly filed in relation to the candidacy. Given that the purpose of a statement of economic interests is to promote full disclosure of any actual or potential conflicts a candidate may have so that the electorate may be better informed, the Board concluded that by merely listing the title of the office sought without indicating the identity of the municipality, each petitioner had failed to satisfy the filing requirement of section 10-5: "By merely listing [the title of the office] with no further information to supplement the disclosure, [petitioners] effectively insulated [themselves] from (i) any charges of perjury related to the answers provided … and (ii) public scrutiny about business dealings [they] may or may not have with the Village of Franklin Park." The Board reasoned:

"[I]f a hypothetical 'bad guy' wanted to avoid answering questions about his connections to his municipality, he would have done exactly what Candidate did here. [citation om.]. By merely stating 'Village President' ['Village Clerk' or 'Village Trustee'], the Candidate has not made a disclosure relative to any office of a unit of local government. Candidate could answer honestly every question about some vague office of 'Village President' ['Village Clerk' or 'Village Trustee'] which could arguably relate to the Village of Skokie, the Village of LaGrange, or the Village of Evergreen Park, but technically having avoided providing any answers about his dealings with the Village of Franklin Park. In addition, this hypothetical 'bad guy' is insulated from public scrutiny from his constituents or criticism by the media that his answers were incomplete or less than forthcoming. [citation om.] In this case, Candidate could argue that he answered fully all the questions posed on the [Statement of Economic Interest] but his answers had nothing to do with the office of Village President, [Village Clerk or Village Trustee] of the Village of Franklin Park. If deliberate, the Cook County State's Attorney could not prosecute the Candidate for perjury, nor could the Chicago Tribune criticize the Candidate for being untruthful."

¶ 8    The Board further found that the lack of a date on the verification was also problematic because, without a date, "it cannot be determined what year the disclosure relates to." The Board noted that the Ethics Act specifically requires that a statement of economic interest "shall be verified, dated and signed by the person making the statement." 5 ILCS 420/4A-104 (West 2014). Although each of petitioners' statements contained a date stamp from the Cook County Clerk, the Board concluded that this was insufficient to identify the year to which the disclosures related. The Board did not consider or find that petitioners' failure to list an address on their disclosures was a separate basis upon which their disclosures were defective.

¶ 9    Petitioners each sought review of the Board's decision in the circuit court of Cook County. The matters were thereafter consolidated. The circuit court reversed the Board's decision in each case and directed that petitioners' names appear on the ballot. Respondents appeal to this court.

¶ 10    Electoral boards are considered to be administrative agencies. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46; *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). Under section 10-10.1 of the Code, a candidate or objector aggrieved by the final decision of an electoral board may obtain judicial review of the board's decision in the circuit court. 10 ILCS 5/10-10.1 (West 2014).

¶ 11    Although the Code does not specifically adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)), the standards governing judicial review of a final decision of an election board are substantially the same as those governing review of other agency decisions. *Cinkus*, 228 Ill. 2d at 209. In particular, the standards of review for questions of law and mixed questions of fact and law are the same as those utilized under the Administrative Review Law. As we recently reiterated in *Cunningham v. Schaeflein*:

> "Our supreme court has explained that where the historical facts are admitted or established, the controlling rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is ' "clearly erroneous." ' [Citation.] An administrative agency's decision is deemed clearly erroneous 'when the reviewing court is left with the definite and firm conviction that a mistake has been committed.' (Internal quotations marks omitted.) [Citation.] Pure questions of law, including questions of statutory interpretation, are reviewed *de novo*. [Citation.]" *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19.

"Stated another way, a mixed question is one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *AFM Messenger Service, Inc. v. Illinois Department of Employment Security*, 198 Ill. 2d 380, 391 (2001) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). On appeal from a decision of the circuit court affirming or reversing an electoral board's decision, we review the decision of the board, not the circuit court. *Jackson*, 2012 IL 111928, ¶ 46; *Cinkus*, 228 Ill. 2d at 212.

¶ 12    Although it is arguable that *de novo* review applies (*Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011) ("where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*")), we believe the dispute here implicates the clearly erroneous standard. The facts are undisputed: petitioners'

statements of economic interests listed only the title of the office they seek and not the municipality to which their respective candidacies relate, and the statements were undated. The parties' dispute focuses on the legal effect of these facts; respondents maintain that they require removal from the ballot, and petitioners disagree. That said, the result would be the same under either standard.

¶ 13    Section 10-10 of the Election Code provides: "The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers or petitions are in proper form, and whether or not they were filed within the time and under the conditions required by law, *** and in general shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained ***." 10 ILCS 5/10-10 (West 2014). This provision establishes the basic principle that an electoral board's authority is strictly limited to determining whether a candidate's nomination papers are valid or invalid. *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988); see also *Wiseman v. Elward*, 5 Ill. App. 3d 249, 257 (1972). Because an electoral board can only determine the validity of nomination papers, it cannot impose any other sanction for an Election Code violation.

¶ 14    This case does not involve any defect in petitioners' nominating papers, but in their statements of economic interests. Respondents argue that the Board was entitled to examine the form of petitioners' statements of economic interests and since they did not strictly comply with the Ethics Act, the Board acted within its authority in determining that petitioners' candidacies were invalid. For their part, petitioners contend the Board overstepped its statutory authority in examining the contents of their statements of economic interest. Rather, the Board, having determined that the statements were, in fact, filed should have overruled Godlewski's objections and allowed petitioners' names to remain on the ballot.

¶ 15    As a threshold matter, petitioners contend that respondents have forfeited review of their claims because the objection filed by Godlewski focused on petitioners' deficient *receipts* and not any defects in the statements themselves. But the substance of Godlewski's objections alerted petitioners to the nature of the issues he raised, and it is apparent from the record that the entirety of petitioners' respective statements was considered to be the "receipt" reflecting their filing. Therefore, we will review the merits of the Board's contentions on appeal. See *Cambridge Engineering, Inc. v. Mercury Partners 90 Bi, Inc.*, 378 Ill. App. 3d 437, 453 (2007) (waiver is an admonition to the parties and not a limitation on the court's jurisdiction).

¶ 16    Our supreme court has held that a candidacy may not be challenged based on a claim that the substance of required economic disclosures are false or fraudulent. *Welch v. Johnson*, 147 Ill. 2d 40 (1992). The issue as described in *Welch* was "whether removal from the ballot of a candidate for elective office is a permissible sanction for the candidate's filing, in relation to his candidacy, of a statement of economic interests which is not true, correct and complete due to inadvertence on the candidate's part." *Id.* at 43. Although not set out in the supreme court's opinion, the appellate court's opinion reveals that the candidate's statement failed to disclose employment with another unit of government and the receipt of an honorarium in excess of $500, omissions that the candidate later corrected in amended filings. *Welch v. Johnson*, 214 Ill. App. 3d 478, 481 (1991).

¶ 17    The challengers contended that language in section 10-5 of the Election Code—"[n]omination papers filed [hereunder] are not valid if the candidate named therein fails to file a statement of economic interests *as required* by the [Ethics Act]" (emphasis

added) (10 ILCS 5/10-5 (West 2014))—meant that a disclosure statement that was not true, correct, and complete, whether inadvertently or otherwise, could invalidate a candidate's nomination papers. The supreme court disagreed. The court found that because the Ethics Act contained its own sanctions for failing to file a statement (ineligibility for or forfeiture of office) or willfully filing a false or incomplete statement (criminal penalties) (5 ILCS 420/4A-107 (West 2014)), and the only sanction under the Election Code related to the complete failure to file a statement (invalidating nominating papers) (10 ILCS 5/7-12(8) (West 2014)), it could not infer that invalidating nominating papers was within an election board's authority when the challenge focused not on the failure to file, but on the completeness or accuracy of the candidate's filed disclosures. "A reading of the plain language of [the Ethics Act and the Election Code] convinces us that removal from the ballot is not a permissible sanction for the filing of a statement of economic interests which is not true, correct and complete when filed with the appropriate officer merely due to inadvertence on the part of the person filing the statement." *Welch*, 147 Ill. 2d at 51; see also *Crudup v. Sims*, 292 Ill. App. 3d 1075, 1079 (1997) (refusing to remove candidate from ballot even where candidate willfully filed false statement of economic interests because that sanction not contemplated for violations of the Ethics Act).

¶ 18    But the issue here is not the substance of petitioners' disclosures *per se*; rather, the question is whether petitioners' nominating papers are invalid because their disclosure statements failed to (i) list the unit of government to which their candidacy relates or (ii) date their verifications. And while the Board hypothesized that a "bad guy" could use such omissions to avoid consequences under the Ethics Act, the record contains no evidence suggesting one way or the other whether these omissions were intentional or inadvertent.

¶ 19    The Board's reasoning in this case followed closely and relied heavily on our decision in *Cortez v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130442. As relevant here, a candidate for office in Calumet City, Larry Caballero, filed a statement of economic interests required of candidates for statewide office instead of the form used by candidates for local office. We noted that while we could not determine whether use of the wrong form was intentional or inadvertent, Caballero's answers to questions regarding economic interests related to the State of Illinois avoided answering questions regarding his economic interests relating to Calumet City.

¶ 20    For example, the statewide form asked for information regarding the candidate's relationship with "any entity doing business in the State of Illinois," while the local candidate form sought information regarding the candidate's interest in "any entity doing business with a unit of local government in relation to which the person is required to file." (Internal quotation marks omitted.) *Id.* ¶ 29. *Cortez* found that a candidate's use of the statewide form allowed the candidate to avoid (i) listing any of out-of-state businesses that he owns that do business with the local government or (ii) identifying which listed businesses actually do business with the local government. *Id.* Finding that several of the questions on the statewide form differed significantly from those on the local form, the court noted the possibility of circumvention of Ethics Act requirements:

> "[W]e observe that, if a hypothetical 'bad guy' wanted to avoid answering questions about his connections to his municipality, he would have done exactly what Caballero did here. Filling out the wrong form completely insulates a candidate from any charges of perjury. He could answer honestly every question about the State of Illinois and,

thus, avoid having to provide any answers—truthful or otherwise—about his dealing with his own municipality." *Id.* ¶ 34.

¶ 21     The observations in *Cortez* regarding a candidate's ability to avoid revealing relevant financial information by using the wrong disclosure form do not neatly translate to the facts before us. *Cortez* stands for the proposition that when a candidate for public office files the wrong disclosure form that does not, in fact, disclose the candidate's economic interests in the unit of government related to the candidacy, the Election Code's filing requirement has not been met. Here, each of the petitioners did file the correct form, but they did not identify the unit of government to which the disclosures related. Unlike *Cortez*, we do not believe this omission enabled petitioners to honor the letter of the law while violating its spirit.

¶ 22     Petitioners all revealed that they had no relevant financial connections to "the unit of local government in relation to which" they were required to file. Petitioners' nominating papers revealed that they were all residents of Franklin Park and, as noted, petitioners filed the entirety of their statements with the Village so that any interested resident could easily locate both the nominating papers and the statements. Although the Board opined that the failure to specify the unit of local government on their statements of economic interest could conceivably allow petitioners to contend that their disclosures related, not to Franklin Park, but to some other municipality, neither the Board nor respondents explain how this is so. Petitioners are not residents of any other municipality nor, so far as the record reveals, are they running for public office anywhere other than Franklin Park. By the same token, given the filing of petitioner's nominating papers, because Franklin Park is the only municipality as to which petitioners could be required to file statements of economic interest, one could reasonably conclude that their disclosures related only to their candidacy for public office in their home town. If, for example, one of the petitioners, contrary to the "DNA" on the form, owned a business that had a contract with Franklin Park, we do not believe either a perjury prosecution or public outcry would be deterred by the fact that "Franklin Park" does not appear on the form, since the form and petitioner's nominating papers could easily be connected. We simply do not perceive here the potential evils identified in *Cortez*, nor do we believe, like *Cortez*, petitioners' disclosures can be characterized as no disclosures at all.

¶ 23     The circumstances here are analogous to those cases that have found incomplete descriptions or omissions regarding the office for which the financial disclosure is made to be an insufficient reason for invalidating a candidate's nominating papers. See, *e.g.*, *Cardona v. Board of Election Commissioners*, 346 Ill. App. 3d 342, 346 (2004) (receipt evidencing filing of candidate's statement of economic interests listed the office sought as "candidate"; court found that any inadequacy in receipt could not result in ballot removal); *Requena v. Cook County Officers Electoral Board*, 295 Ill. App. 3d 728, 734 (1998) (candidate's listing of "Circuit Court of Cook County" as the position she was seeking in her statement of economic interests was incomplete as it did not indicate she was running for judge or the vacancy she sought, but did not warrant invalidating her nominating papers in light of *Welch* and *Crudup*); *Bryant v. Cook County Electoral Board*, 195 Ill. App. 3d 556, 559 (1990) (refusing to invalidate candidate's nominating papers because the words used to identify the office sought in the statement of economic interests, "15th Representative District," adequately informed the public of the office sought). We find that nothing in petitioners' failure to list "Franklin Park," in addition to the respective office sought, is fatal to their candidacies.

¶ 24    Similarly, we find no reason to invalidate petitioners' nominating papers because the verifications on their disclosure forms were not dated. Again, because petitioners' statements were all date-stamped by the County Clerk's office and were filed in their entirety with the clerk of Franklin Park, we do not see how the absence of a date next to petitioners' verifications would allow them to maintain that the disclosures related to some year other than the year preceding the date the statements were filed. And since petitioners represented in their nominating papers that they had filed or would file their statements of economic interest required by the Ethics Act, it is an elementary matter to connect the dots between the two filings. In other words, we do not believe that the omission of a date from the verification would allow petitioners to escape the consequences under the Ethics Act of filing a false statement.

¶ 25    We do not encourage candidates to take short cuts in complying with the mandatory requirements of the Election Code and the Ethics Act. But substantial compliance with election requirements will save a candidate's nominating papers if the defects complained of are minor. See *Goodman*, 241 Ill. 2d at 409 ("If a candidate's statement of candidacy does not substantially comply with the statute, the candidate is not entitled to have his or her name appear on the primary ballot."); *Atkinson v. Roddy*, 2013 IL App (2d) 130139, ¶ 22 (recognizing substantial compliance doctrine applies when invalidating charge concerns a technical violation). We do not adopt petitioners' blanket position that because the Election Code does not require strict compliance with the Ethics Act, deficiencies in statements of economic interests will never constitute grounds for invalidating a candidate's nominating papers. *Cortez* holds otherwise. But we do believe that the complained of defects involved here are minor and that refusing to invalidate petitioners' nominating papers on the grounds urged by respondents is wholly consistent with both the Election Code and the Ethics Act.

¶ 26    As in any election dispute, we are mindful of the fact that "ballot [access] is a substantial right and not to be lightly denied." *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 460 (2008). We must "tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997). Under the circumstances presented, any claimed defects in petitioners' statements of economic interest are, in our view, outweighed by the public interest in ballot access and we, therefore, affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.