# Illinois Official Reports

## Appellate Court

---

**Rottman v. Illinois State Officers Electoral Board**, 2018 IL App (1st) 180234

---

| | |
|---|---|
| Appellate Court Caption | THOMAS J. ROTTMAN JR., Plaintiff-Appellee, v. THE ILLINOIS STATE OFFICERS ELECTORAL BOARD and Its Members, WILLIAM J. CARDIGAN, JOHN R. KEITH, ANDREW K. CARRUTHERS, IAN K. LINNABARY, WILLIAM M. McGUFFAGE, KATHERINE S. O'BRIEN, CHARLES W. SCHOLZ, and CASSANDRA B. WATSON; THE ILLINOIS STATE BOARD OF ELECTIONS; and SCOTT DRURY, Defendants (Scott Drury, Defendant-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-18-0234 |
| Rule 23 order filed<br>Motion to publish<br>*sua sponte*<br>Opinion filed | February 16, 2018<br><br>March 23, 2018<br>March 23, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-COEL-6; the Hon. Alfred J. Paul, Judge, presiding. |
| Judgment | Circuit court judgment reversed.<br>Board decision affirmed. |
| Counsel on Appeal | Reed Smith LLP (Casey L. Westover, of counsel), and Dwyer & Coogan, P.C. (Patrick E. Dwyer III, of counsel), both of Chicago, for appellant. |

James P. Nally, P.C. (James P. Nally, of counsel), and Michael J. Kasper, both of Chicago, for appellee.

Panel JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Scott Drury, is a candidate for the Democratic nomination for the Office of Illinois Attorney General in the general primary election to be held on March 20, 2018. Plaintiff, Thomas J. Rottman Jr., objected to Drury's nomination petition. The State Officers Electoral Board (Board) overruled Rottman's objection. Rottman sought review of the Board's decision in the circuit court, which reversed the Board's decision and ordered that Drury's name not appear on the ballot. Drury appeals, contending that the Board correctly found that he satisfied the requirements of section 7-12(8) of the Election Code (10 ILCS 5/7-12(8) (West 2016)) when he submitted a receipt with his nomination petition, showing that within the preceding year, he filed his statement of economic interests with the Secretary of State in connection with his position as state representative. We reverse the circuit court's decision and conclude that Drury's name should appear on the ballot.

¶ 2 Drury has been a state representative in the General Assembly. On November 27, 2017, Drury filed a nomination petition with the Illinois State Board of Elections for nomination as the Democratic candidate for the office of Illinois Attorney General. The nomination petition included a statement of candidacy and a receipt from the Office of the Secretary of State, dated November 17, 2017, which stated:

> "Please accept this receipt as acknowledgment that our office has received and filed your Statement of Economic Interests pursuant to the Illinois Governmental Ethics Act. Your statement was filed on April 10, 2017 for the following agencies:
> REPRESENTATIVE IN THE GENERAL ASSEMBLY."

¶ 3 On December 11, 2017, Rottman filed an objection with the Illinois State Board of Elections, contending that under section 7-10 of the Election Code (10 ILCS 5/7-10 (West 2016)), Drury should have filed a statement of economic interests " 'in relation to his candidacy,' to-wit, his candidacy for Illinois Attorney General, not later than December 4, 2017." Rottman continued that the Election Code only excused this requirement where, within the last year, a candidate filed a statement of economic interests in relation to the same governmental unit for which the candidate now sought office. However, state representative and attorney general are not in the same governmental unit because the positions are in two distinct and separate branches of government. According to Rottman, Drury should have filed a new statement of economic interests and receipt, and by not doing so, Drury failed to comply with the Election Code and should be removed from the ballot.

¶ 4    Drury opposed the objection before the Board, contending that the positions of state representative and attorney general relate to the same governmental unit—the State of Illinois. On January 5, 2018, a hearing examiner recommended that the objection be sustained and Drury's name not appear on the ballot for the March 20 election. The hearing examiner concluded that members of the General Assembly are in a different unit of government than members of the executive branch, and so Drury should have submitted a new statement of economic interests for his attorney general candidacy.

¶ 5    The General Counsel of the Illinois State Board of Elections disagreed with the hearing examiner. In his recommendation, the General Counsel stated in part that he was not convinced that the legislative and executive branches are separate units of government. The General Counsel further stated that Drury's statement of economic interests, which he filed as a state representative, related to the State of Illinois and not only to the representative district that he represents.

¶ 6    On January 11, 2018, the Board issued a decision that adopted the General Counsel's recommendation and overruled Rottman's objection. The Board found that the offices of state representative and attorney general were the same governmental unit for the purposes of filing a statement of economic interests. Thus, Drury's filing of a statement of economic interests for the office of state representative within a year preceding the date on which he filed his nomination papers for attorney general satisfied the requirements of the Election Code. The Board ordered that Drury's name be certified for the primary election ballot.

¶ 7    On January 16, 2018, Rottman sought review of the Board's decision in the circuit court. On February 2, 2018, after a hearing, the court reversed the Board's decision and ordered that Drury's name not appear on the primary ballot as a candidate for attorney general. Drury filed a notice of appeal on the same day. On February 5, 2018, pursuant to a motion by Drury, this court (1) stayed enforcement of the circuit court's order and judgment pending the outcome of the instant appeal and (2) granted a request for expedited consideration.

¶ 8    On appeal, Drury contends that the Board correctly held that he satisfied the requirements of section 7-12(8) of the Election Code (10 ILCS 5/7-12(8) (West 2016)). Drury argues that he filed his statement of economic interests in relation to the same governmental unit for which he now seeks office. Drury asserts that with respect to state offices, the State of Illinois is the applicable governmental unit for a statement of economic interests. Drury maintains that statutory and constitutional language support the Board's decision and basic canons of statutory interpretation dictate that Illinois's executive and legislative branches are not separate governmental units.

¶ 9    Meanwhile, Rottman contends that Drury could not use the statement of economic interests receipt that relates to his position as state representative for his attorney general candidacy. Rottman argues that Drury cannot use the receipt he filed for a legislative office to support his candidacy for an executive office position because legislative and executive offices are different units of government. Rottman states that per the Illinois Constitution, "[t]he legislative, executive and judicial branches are separate." Ill. Const. 1970, art. II, § 1. As such, Drury's nomination papers are invalid.

¶ 10    The parties dispute whether Drury met the following requirement in the Election Code:

"Nomination papers filed under this Section are not valid if the candidate named therein fails to file a statement of economic interests as required by the Illinois Governmental Ethics Act [(Ethics Act) (5 ILCS 420/1-101 *et seq.* (West 2016))] in

relation to his candidacy with the appropriate officer by the end of the period for the filing of nomination papers unless he has filed a statement of economic interests in relation to the same governmental unit with that officer within a year preceding the date on which such nomination papers were filed. If the nomination papers of any candidate and the statement of economic interest of that candidate are not required to be filed with the same officer, the candidate must file with the officer with whom the nomination papers are filed a receipt from the officer with whom the statement of economic interests is filed showing the date on which such statement was filed. Such receipt shall be so filed not later than the last day on which nomination papers may be filed." 10 ILCS 5/7-12(8) (West 2016).

¶ 11 Drury seeks to fall under the provision stated above that he did not need to file a statement of economic interests in relation to his attorney general candidacy because he filed a statement of economic interests in relation to the same governmental unit within the preceding year. Thus, at issue is the meaning of "governmental unit." Because this issue requires us to construe the Election Code, Ethics Act, and Illinois Constitution, our review is *de novo*. See *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 12 (issues of statutory construction are reviewed *de novo*); see also *Cortez v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130442, ¶ 14 (a dispute over the interpretation of a statute is a question of law that calls for *de novo* review). Further, on appeal from a decision of the circuit court that affirmed or reversed an electoral board's decision, we review the decision of the board and not the circuit court. *Guerrero v. Municipal Officers Electoral Board*, 2017 IL App (1st) 170486, ¶ 11.

¶ 12 Two statutes and the Illinois Constitution reference the requirement that a candidate file a statement of economic interests and include the word "unit." Above, we noted that section 7-12(8) of the Election Code (10 ILCS 5/7-12(8) (West 2016)) requires candidates to file a statement of economic interests. Additionally, section 4A-101 of the Ethics Act (5 ILCS 420/4A-101 (West 2016)) requires candidates to file such a statement. The Ethics Act provides two forms for the statement of economic interests: one that pertains to a candidate's connections to entities "doing business in the State of Illinois" and another that pertains to a candidate's connections to entities "doing business with a unit of local government." *Id.* §§ 4A-103, 4A-104. The disclosures "are intended to avoid any conflict of interest between the government and its officers and employees and to instill in the public trust and confidence in its elected officials." *Crudup v. Sims*, 292 Ill. App. 3d 1075, 1076 (1997).

¶ 13 The Illinois Constitution also requires candidates to file a statement of economic interests:

"All candidates for or holders of state offices and all members of a Commission or Board created by this Constitution shall file a verified statement of their economic interests, as provided by law. The General Assembly by law may impose a similar requirement upon candidates for, or holders of, offices in units of local government and school districts. *** This Section shall not be construed as limiting the authority of any branch of government to establish and enforce ethical standards for that branch." Ill. Const. 1970, art. XIII, § 2.

¶ 14 "With both constitutional and statutory interpretation, our primary goal is to ascertain the drafters' intent ***." *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 30. The best indication of intent is the plain language of the drafters' words. *Id.* Words and phrases are not viewed in isolation, and are considered in light of other relevant provisions of the statute at issue. *Bettis*, 2014 IL 117050, ¶ 13. Each word, clause, and sentence must be given a reasonable

construction if possible, and should not be rendered superfluous. *Id.* Where the meaning of an enactment is unclear from the language itself, we may look beyond the language used and consider the purpose behind the law and the evils the law was designed to remedy. *Id.* We also note that statutes are read together and construed in a harmonious fashion. *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 6.

¶ 15        We find that the word "unit" in the Election Code, Ethics Act, and Illinois Constitution means either the state or a local government entity, and not the executive, legislative, or judicial branch of state government. We begin with the Illinois Constitution. When the word "unit" is used in that document, it is used to distinguish a local government entity from the state government. Section 1 of article VII, "Municipalities and Units of Local Government," defines "[u]nits of local government" as "counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts." Ill. Const. 1970, art. VII, § 1. Section 2 of article XIII, "Statement of Economic Interests," separates candidates for state offices from candidates for "units of local government and school districts"—all candidates for "state offices" must file a statement of economic interests, while the General Assembly may impose a similar requirement on candidates for "offices in units of local government and school districts." Ill. Const. 1970, art. XIII, § 2. Further, "any branch of government" may establish and enforce ethical standards for "that branch." *Id.* The Illinois Constitution therefore provides that state offices, units of local government, and—key for this case—branches of government are not synonymous.

¶ 16        Further underlining that "unit" and "branch" are not synonymous is our constitution's use of the word "branch" in other provisions. Section 1 of article II states that "[t]he legislative, executive and judicial branches are separate." Ill. Const. 1970, art. II, § 1. We recall the principle that " 'when the legislature uses certain words in one instance and different words in another, different results are intended.' " *Jackim v. CC-Lake, Inc.*, 363 Ill. App. 3d 759, 767-68 (2005) (quoting *Hoffman v. Altamore*, 352 Ill. App. 3d 246, 256 (2004)). If the drafters intended that the legislature and executive parts of our government were units, they would have said so. Instead, they are described as different branches. Additionally, nowhere in the sections pertaining to the contents of the General Assembly or the executive branch, where the attorney general is mentioned, does the word "unit" appear. See Ill. Const. 1970, art. IV, § 1; art. V, § 1. Specifically, our constitution provides that the "Executive Branch shall include a Governor, Lieutenant Governor, Attorney General, Secretary of State, Comptroller and Treasurer elected by the electors of the State." Ill. Const. 1970, art. V, § 1.

¶ 17        The two different forms of statements of economic interests in the Ethics Act also support our finding that "governmental unit" in the Election Code means either the state or a local government entity. As we stated above, one form seeks information about the candidate's connections to "any entity doing business in the State of Illinois," while the other form seeks information about the candidate's connections to "any entity doing business with a unit of local government." 5 ILCS 420/4A-103, 4A-104 (West 2016). Notably, the word "branch" does not appear on the forms. See also *Cortez*, 2013 IL App (1st) 130442, ¶ 28 (noting that there is one form for candidates for statewide office that asks questions about the State of Illinois and one form for local candidates that asks questions about the local unit of government at issue). We presume that the legislature did not intend absurdity, inconvenience, or injustice. *Bettis*, 2014 IL 117050, ¶ 13. If Drury were required to fill out a new statement of economic interests

- 5 -

because he sought to move from one state office to another, he would be filling out the exact same form. We do not believe that the legislature intended that result.

¶ 18    Our review of the relevant statutes and the Illinois Constitution convinces us the phrase "governmental unit" in section 7-12(8) of the Election Code (10 ILCS 5/7-12(8) (West 2016)) means either the state or a local government entity. As a result, because state representatives and the position of attorney general are both part of the state government, as opposed to either position being part of a local government entity, Drury was not required to file a new statement of economic interests. To the extent that Rottman takes issue with the fact that Drury's receipt indicates that his statement was filed for "REPRESENTATIVE IN THE GENERAL ASSEMBLY," we note that "nothing in article 7 or 8 [of the Election Code] prescribes that a receipt must contain a specific description of the office the candidate is seeking." *Cardona v. Board of Elections Commissioners*, 346 Ill. App. 3d 342, 344 (2004).

¶ 19    We will briefly comment on the cases that Rottman relied on to support his position. *Kellogg v. Cook County Illinois Officers Electoral Board*, 347 Ill. App. 3d 666 (2004), did not concern whether the candidate could rely on the statement of economic interests filed in relation to the same governmental unit. There, the candidate failed to file a receipt and submitted a statement of economic interests to the Illinois State Board of Elections, instead of filing the statement with the Secretary of State. *Id.* at 668. Those circumstances did not occur here. *Jones v. Municipal Officers Electoral Board*, 112 Ill. App. 3d 926 (1983), is unhelpful because that case also did not involve whether a candidate could rely on a previously filed statement for the same governmental unit. Instead, *Jones* considered whether a candidate's statement sufficiently identified the office for which the statement was filed. *Id.* at 928.

¶ 20    *Miceli v. Lavelle*, 114 Ill. App. 3d 311 (1983), dealt with the same issue presented here, but Rottman has misinterpreted the holding. In *Miceli*, the court considered whether a previously-filed statement of economic interests in relation to employment by the Board of Education of the City of Chicago could be used to satisfy the filing requirements of the Election Code with respect to a candidacy for alderman. *Id.* at 313. The candidate conceded that the Board of Education and the City of Chicago were not the same governmental unit. *Id.* at 317. Indeed, the Board of Education was created statutorily as " 'a body politic and corporate' and is necessarily a unit of government itself, having been thereby so designated by law." *Troutman v. Keys*, 156 Ill. App. 3d 247, 256 (1987). As such, the candidate in *Miceli* could not rely on the statement he filed in relation to his employment with the Board of Education. *Miceli*, 114 Ill. App. 3d at 317. Here, in contrast, state representative and attorney general are part of the same governmental unit. There is absolutely no support in *Miceli* for Rottman's assertion that the candidate in *Miceli* could not use the same statement because the Board of Education was an executive office position and alderman was a legislative office position.

¶ 21    Finally, both parties cited *Purnell v. Municipal Officers Electoral Board*, 275 Ill. App. 3d 1038 (1995), but that case was decided on grounds other than whether a candidate could use a previously-filed statement of economic interests for the same governmental unit. The previously-filed statement was for employment as a Chicago police officer, and the candidate sought to run for alderman. *Id.* at 1038-39. Ultimately, the court stated that "[v]iewed as an earlier filing made in the same calendar year, the statement is defective because it was late." *Id.* at 1039. The court also asserted that, viewed as an original filing—that is, not falling into the provision that allows a candidate to rely on a previously-filed statement, "the statement is

defective because it misstates the office for which it was filed." *Id.* at 1039-40. The dispositive issue was that the statement was untimely. The court did not comment on whether a Chicago police officer was in the same governmental unit as an alderman.

¶ 22        As a final matter, Drury moves this court to strike certain facts that Rottman included in his brief about search results on the Secretary of State website for other candidates for attorney general. In his brief, Rottman states that before the Board, Rottman argued that a person who put Drury's name and "attorney general" in the Secretary of State's website would not find a statement of economic interests listed. Rottman further asserts in his brief that Drury is the only candidate for attorney general whose statement does not appear and voters could find the statements filed for each of the other candidates. Drury seeks to strike the assertions related to purported searches of other candidates or Drury or facts about other candidates' backgrounds. Drury states that Rottman failed to refer to the pages of the record where these assertions could be found and the evidence that Rottman relies on in his brief was not presented to the Board.

¶ 23        We recognize that Rottman did not provide a citation to the record for his statements about finding the statements of economic interests for other candidates, which violates Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017) (argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Indeed, Rottman could not have provided such a citation. Per the transcript of the Board hearing, the record did not include the results of a search of other candidates' names and the term "attorney general" on the Secretary of State's website. On this topic, a Board member and Rottman's counsel had the following exchange:

> "VICE CHAIRMAN KEITH: Mr. Nally [Rottman's counsel], you've indicated in your argument that if one were to go to the Secretary White's website and look up Representative Drury's name and Attorney General you would find nothing, was that in the record?
>
> MR. NALLY: Yes.
>
> VICE CHAIRMAN KEITH: Was it in the record what you would find if you put in Patrick Quinn, Attorney General?
>
> MR. NALLY: No, it was not.
>
> VICE CHAIRMAN KEITH: Was it in the record what you would find if you put in Renato Mariotti, Attorney General?
>
> MR. NALLY: No, because I'm assuming those clients filed proper Statements of Economic Interest.
>
> VICE CHAIRMAN KEITH: Would it surprise you if you found out it wasn't there?
>
> MR. NALLY: I wasn't looking for him, and that's not the case before this Board."

Although Rottman failed to cite the record in support of this part of his argument, and moreover, asserted facts that were not in the record, we will not strike this portion of his brief. "[S]triking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review." (Internal quotation marks omitted.) *Independent Trust Corp. v. Kansas Bankers Surety Co.*, 2016 IL App (1st) 143161, ¶ 33. Because the violation is not so flagrant that we are unable to review the appeal, we have simply disregarded the inappropriate statements. *Affiliated Health Group, Ltd. v. Devon Bank*, 2016 IL App (1st) 152685, ¶ 15.

¶ 24     Our supreme court has stated that "access to a place on the ballot is a substantial right not lightly to be denied." *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 32; *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992). Further, we must tread cautiously when construing statutory language that restricts the people's right to endorse and nominate the candidate of their choice. *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997). We believe that our interpretation of the relevant enactments comports with those principles. Drury complied with section 7-12(8) of the Election Code (10 ILCS 5/7-12(8) (West 2016)) when he relied on his previously-filed statement of economic interests for his position as state representative.

¶ 25     For the foregoing reasons, we reverse the judgment of the circuit court, affirm the Board's decision to overrule Rottman's objection, and certify Drury's name for the March 20, 2018, general election primary ballot.

¶ 26     Circuit court judgment reversed.

¶ 27     Board decision affirmed.